UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ORSON D. MUNN III AND CHRISTINE MUNN, AS PARENTS AND NEXT FRIENDS OF C. M., AND INDIVIDUALLY, | : : : : |
| Plaintiffs, | : : |
| V. | : : |
| THE HOTCHKISS SCHOOL, | : : |
| Defendant. | : JUNE 10, 2009 |

## **COMPLAINT**

### Introduction

Plaintiffs Orson D. Munn and Christine Munn bring this action on behalf of their minor daughter, C. M., to recover for the catastrophic personal injuries she sustained during her participation in a student summer travel program to China as a result of the negligence of defendant The Hotchkiss School. Plaintiffs seek to recover for their daughter's injuries and for the substantial damages that she and they have sustained as a result of her physical injuries.

## I. Jurisdiction and Venue

1. This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332(a). Plaintiffs reside in and are citizens of the State of New York and defendant is a non-stock corporation formed pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that defendant resides in this District and in that a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District.

## II. Parties

3. Plaintiffs Orson D. Munn III and Christine Munn are the parents of C. M., a minor. Orson D. Munn III, Christine Munn and C. M. are citizens of the State of New York.

4. Defendant The Hotchkiss School is a non-stock corporation formed pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

## III. Claim for Relief

5. At all times mentioned herein and to the present time, defendant The Hotchkiss School has maintained and operated a private boarding school ("Hotchkiss") in Lakeville, Connecticut that holds itself out as one of this nation's premier college preparatory boarding schools and purports to offer an educational experience of "unsurpassed quality" to its students.

6. At all times mentioned herein and to the present time, Hotchkiss has accepted students for residential living on school grounds in Lakeville and has assumed responsibility, in the absence of the students' parents, for the protection, safety and welfare of its students and adopted and required compliance with rules of behavior intended for the protection, safety and welfare of its students.

7. At all times mentioned herein and to the present time, Hotchkiss has held itself out as offering high-quality international study and travel programs to its students, with a particular emphasis on the quality of its international programs involving China and its "long-standing China connection."

8. C. M. was born in 1992 and was, during the 2005-06 school year, in eighth grade.

9. During the 2005-06 school year, C. M. applied for admission to Hotchkiss.

10. In the spring of 2006, Hotchkiss accepted C. M. and, thereafter, defendant entered into an agreement with plaintiffs Orson D. Munn III and Christine Munn to admit C. M. to Hotchkiss, for compensation, as a residential student in its Class of 2010, beginning in the fall of 2006.

11. During the 2006-07 school year, C. M. attended Hotchkiss as a residential student in its Class of 2010.

12. During the 2006-07 school year, Hotchkiss offered its students the opportunity to participate in a summer program study and travel educational experience in China in June-July 2007.

13. Hotchkiss represented to plaintiffs that its summer 2007 China program was offered as part of its international educational programs and was organized and supervised by members of the Hotchkiss faculty.

14. As a condition of participating in the program, Hotchkiss required each student participant and his or her parents to agree that the student would be subject to all rules and regulations of Hotchkiss, would abide by all policies, rules and regulations of Hotchkiss and would obey all directives issued by Hotchkiss, the summer program leader and any individuals associated with the summer program.

15. With the consent of her parents, C. M., who was then fifteen years old, sought to participate in the Hotchkiss summer 2007 China program, and Hotchkiss agreed, for compensation, to allow C. M. to participate in the program.

16. Prior to the start of the 2007 China trip, Hotchkiss did not develop a proper trip protocol for handling medical emergencies, for notifying parents of their children's medical problems, and for emergency transfers of trip participants back to the United States; did not provide for proper medical staffing of the trip; did not provide warning information to parents about the likelihood that students on the trip would be exposed to tick or mosquito-infested areas; and did not require or provide sufficient warnings to parents about available vaccination for tick-borne or mosquito-borne viral encephalitis.

17. C. M. traveled to China in June 2007 as a participant in the Hotchkiss summer 2007 China program.

18.  Hotchkiss assumed and had the responsibility, in the absence of C. M.'s's parents, for maintaining her protection, safety and welfare while she was in China and for exercising reasonable measures to protect her from harm while in China.

19.  During the summer 2007 China trip, the Hotchkiss leaders of the trip took the students participating on the trip, including C. M., hiking in rural areas of China known to be infested with mosquitos and ticks carrying and capable of transmitting viral encephalitis to humans with whom they came into contact.

20.  Notwithstanding the serious potential health risks posed by such mosquitos and ticks, the Hotchkiss trip leaders failed to require the students to take proper precautions against potential mosquito or tick bites, including requiring the students to wear protective clothing or to utilize protective insect repellent.

21.  Under the direction of the Hotchkiss program leaders, C. M. and the other students participating in the summer 2007 China trip went hiking in rural areas of China known to be infested with ticks and mosquitos in short sleeve tops and shorts and without utilizing protective repellent.

22.  A number of the students on the hiking excursion, including C. M., suffered insect bites while hiking and developed various degrees of illness.

23.  C. M. had the most severe reaction to the insect bites developing acute viral encephalitis, which included total body paralysis, depressed levels of consciousness and seizures.

24.  The Hotchkiss trip leaders, who had no medical training, did not appreciate the significance of the initial symptoms of the illness – which included fever, mental confusion and diarrhea – that C. M. first exhibited.

25. The Hotchkiss trip leaders eventually took C. M. to a local medical facility in the China countryside, which also lacked qualified personnel to diagnose C. M.'s condition and which misdiagnosed her problems as cardiac-related.

26. Hotchkiss, which had no protocol in place for notifying students' parents of medical problems, failed to notify C. M.'s parents promptly of the extent of their daughter's illness, preventing them from intervening immediately to obtain better medical treatment for her.

27. Ultimately, when C. M.'s condition continued to worsen, and when the degree of her mental confusion became evident, C. M. was transferred to the Beijing United Medical Center, where she remained for several weeks.

28. Proper diagnosis and treatment of C. M.'s condition was delayed by the failure of Hotchkiss to have appropriate medical personnel travel with the summer 2007 China program group to diagnose and treat or help arrange proper treatment of medical problems that students and faculty on the trip might have.

29. Hotchkiss failed to undertake pre-trip planning and to make pre-trip arrangements for the transfer back to the United States of students with medical emergencies arising during the China trip, delaying C. M.'s transfer to the United States for treatment and requiring plaintiffs to personally arrange for transportation of their daughter back to the United States, at substantial expense, and to travel to China to arrange for their daughter's transfer back to the United States.

30. On July 18, 2007, C. M. was flown back to the United States, at plaintiffs' expense, for treatment in the United States. She was taken directly to the pediatric intensive care unit at Weill Cornell Medical Center, where she was hospitalized for several weeks, followed by six weeks of rehabilitation therapy at the Rusk Institute.

31. On admission to Weill Cornell, C. M. was, although neurologically alert and attentive, virtually mute, with the ability to make only a few high-pitched noises. She had very slow and hesitant movements involving the tongue, marked drooling, and rigidity of the jaw and cervical muscles. She further suffered from extreme micrographia in the right hand, and dystonic posturing of the left arm and hand with extremely slow alternating movements in both hands.

32. Subsequent to her return to this country, C. M. continued to exhibit severe neurological deficits. A neuropsychological screening evaluation conducted by Hotchkiss in May 2008 concluded that C. M. demonstrated problems with sustained attention, slowed mental processing and impaired executive skills; problems scanning a visual array and maintaining vigilance and attentional consistency over time; problems with speedy and efficient mental processing; and difficulty with initiating problem-solving and establishing and maintaining a cognitive set. The evaluation also found that C. M. demonstrated problems with memory, likely deriving from a combination of her slowed information processing, problems with attention, and inability to organize new information in a way that integrates it with her existing knowledge, thereby making it accessible for later recall.

33. At the present time, despite intensive and ongoing physical, speech and occupation therapy, C. M. continues to suffer severe neurologic injuries and disabilities that interfere with her ability to engage in her normal life's activities and that will likely continue to impair her for the remainder of her lifetime. Despite diligent efforts to try to improve her impaired speech, C. M. remains – after daily speech therapy sessions, six days per week for over a year – unable to speak anything but a few words with any clarity. She continues to have great difficulty eating, drinking, swallowing and controlling saliva. While her gross motor skills have

improved, she continues – despite continuing physical therapy sessions and other forms of physical training several times per week for over a year – to have substantial deficits, including cramping in her right arm when she tries to write or engage in similar activities. Her fine motor skills, including her handwriting, also remain substantially impaired, notwithstanding over a year of occupational therapy sessions. She further is receiving psychotherapy to help her adjust to her disabilities and their profound impact on her life.

34. C. M.'s current injuries and disabilities, as described herein, are permanent.

35. C. M.'s injuries and disabilities were caused by the viral encephalitis she contracted in China.

36. C. M. has incurred hundreds of thousands of dollars in medical expenses, including physical, speech and occupation therapy and counseling, for treatment of her injuries and will incur substantial medical expenses for the remainder of her lifetime. These expenses have, to date, been borne in substantial part, by plaintiffs Orson D. Munn III and Christine Munn, who will continue to bear a substantial portion of their daughter's medical expenses in the future.

37. As a result of her injuries, C. M.'s ability to engage in her normal life's activities has been permanently impaired and she will be unable to lead and enjoy a normal life.

38. As a result of her injuries, C. M. will be unable to engage in a normal work-life, and her future earning capacity has been permanently and substantially impaired.

39. As a result of her injuries, C. M. has sustained physical pain and suffering.

40. As a result of her injuries, C. M. has sustained severe emotional distress and mental pain and anguish over her condition and the effect it has had on her life, and will continue to sustain such emotional distress, mental pain and anguish over the course of her lifetime.

41. C. M.'s injuries, and her and plaintiffs' damages, were caused by the negligence of defendant The Hotchkiss School, its administrators, employees and agents, for whose negligence defendant is liable, in one or more of the following respects:

   a. in that it failed to warn C. M. and plaintiffs about her risk of contracting viral encephalitis on the summer 2007 China trip;

   b. in that its employees and agents leading the trip caused C. M. to be exposed to infectious tick and mosquito bites without providing for proper protective clothing, insect repellent or vaccination;

   c. in that it failed to provide appropriate medical personnel on the trip to help diagnose and provide or arrange treatment for trip participants' medical problems arising on the trip;

   d. in that it failed to have established procedures in place for immediate transfer back to the United States for treatment of trip participants contracting serious illness;

   e. in that it failed to advise C. M. and her parents of available vaccines against viral encephalitis appropriate for persons of C. M.'s age traveling to China for the length of the summer 2007 China trip and traveling to rural areas of China;

   f. in that it failed to establish a proper protocol for the trip detailing procedures for dealing with medical emergencies, notification of parents, and transfer of trip participants back to the United States for treatment.

## IV.     PRAYER FOR RELIEF

Wherefore, plaintiffs pray the following relief:

1. Compensatory damages;

2. Such other relief as the Court deems appropriate.

> PLAINTIFFS ORSON D. MUNN III AND
> CHRISTINE MUNN, AS PARENTS AND NEXT
> FRIENDS OF C. M., AND INDIVIDUALLY
>
> BY _/s/_____
> DAVID S. GOLUB  ct 00145
> JONATHAN M. LEVINE  ct 07584
> CRAIG N. YANKWITT  ct 26165
> SILVER GOLUB & TEITELL LLP
> 184 ATLANTIC STREET
> P.O. BOX 389
> STAMFORD, CT  06904
> (203) 325-4491
> (203) 325-3769 (facsimile)
> dgolub@sgtlaw.com
> jlevine@sgtlaw.com
> cyankwitt@sgtlaw.com

## CLAIM FOR JURY TRIAL

Plaintiffs, through counsel, claim this matter for trial by jury.

                                    PLAINTIFFS ORSON D. MUNN III AND
                                    CHRISTINE MUNN, AS PARENTS AND NEXT
                                    FRIENDS OF C. M., AND INDIVIDUALLY

BY _____
      DAVID S. GOLUB  ct 00145
      JONATHAN M. LEVINE  ct 07584
      CRAIG N. YANKWITT  ct 26165
      SILVER GOLUB & TEITELL LLP
      184 ATLANTIC STREET
      P.O. BOX 389
      STAMFORD, CT  06904
      (203) 325-4491
      (203) 325-3769 (facsimile)
      dgolub@sgtlaw.com
      jlevine@sgtlaw.com
      cyankwitt@sgtlaw.com